**STRAWN et al. v. TRAVELERS INS. CO.**

No. 14052.

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1953.

Wm. V. Brown, Texarkana, Tex., for appellant.

Otto Atchley, Texarkana, Tex., for appellee.

Before HOLMES, RUSSELL, and STRUM, Circuit Judges.

HOLMES, Circuit Judge.

This action arose under the workmen's compensation law of Texas, Revised Civil Statutes of Texas, Articles 8306 et seq., Vernon's Ann.Civ.St. It was instituted by Corean M. Strawn and Rose A. Strawn, the widow and daughter of Austin Strawn, deceased, against the appellee as insurer of the International Creosoting and Construction Company, for which company the deceased was working when he met his death in the manner hereinafter stated. At the conclusion of the evidence for plaintiffs, appellants here, the court ruled that there was no evidence to prove that the death of the deceased was the result of an accidental injury, and directed the jury to return a verdict for the defendant.

The evidence shows that on the morning of December 6, 1950, Strawn, who had been in the company's employ for thirty-four years, was engaged in counting cross-ties with a certain fellow servant named Ray, both of whom had been working for approximately thirty minutes. After completing their assignment, the two men proceeded together toward the yard office to prepare their reports. After walking in that direction for an estimated seventy-five yards, Ray, surprised by a sudden and unusual noise, turned to find Strawn lying on the ground. When he attempted to help Strawn to his feet, the latter's only response was a "gurgling noise." Two minutes later another employee, who had hastened to the scene, examined Strawn and found that he was no longer breathing.

The road on which the two employees were walking at the time of the accident was covered with rocks, some of which were estimated to be two-and-a-half inches in

diameter. The ground was sprinkled with snow; and, according to the appellants' testimony, the highway between their home and the plant was frozen, and there was "ice everywhere." From the marks in the snow, it appeared that the deceased's right foot had slipped or dragged for a distance of eighteen or twenty inches. Small amounts of blood were found on the deceased's left temple and on the ground. His glasses were broken by the fall, and were found near the body with his knife, pencil, and a twenty-five cent piece, indicating that he might have suddenly withdrawn his hands from his pockets. Ray testified that he could not recall whether there was anything present to indicate that Strawn had used his hands in an effort to cushion or divert his fall; however, another witness stated that, on examining the scene, he found nothing which so indicated. No testimony was offered as to the actual position of the deceased's arms and hands while his body lay on the ground.

There was nothing unusual about Strawn's departure for work on the morning of his death; he had eaten his usual breakfast, left at the customary hour, and made no complaints of ill-health to his wife or fellow-employees. Some testimony was offered to show that he might have had heart trouble, as, on the 10th or 11th of November, he had "fainted or something" while in his home. There was no medical testimony as to the cause of his death.

After the plaintiffs, appellants here, had rested their case, the appellee filed a motion for a directed verdict on the ground that the claimants had failed to show by a preponderance of the evidence that the deceased had died from an accidental injury, and that to permit the jury to decide the question would invite speculation, conjecture, and guesswork. This view was accepted by the court and so stated in its peremptory instruction to the jury. It is contended here that the court's action in sustaining the motion was improper, since the evidence as to the cause of death had raised an issue which should have been determined by the jury. We think this contention is correct.

■■ Within the meaning of the Texas Workmen's Compensation Act, in order for death or disability to be compensable, it must be shown to have resulted from an accidental injury. It is not necessary that the damage be visible or external, nor is direct evidence required to establish its existence. Brodtmann v. Zürich General Accident & Liability Ins. Co., Ltd., 5 Cir., 90 F.2d 1. The petition alleged that Strawn was suffering from a heart condition, and that he had been under the care of two physicians prior to his death. This allegation was supported by testimony on the trial. The appellee, in its answer, denied the allegation, thereby raising an issue as to its truth. There was evidence that Strawn's body had apparently struck an object with sufficient force to produce a flow of blood from his head onto the ground. Assuming that he was afflicted with a heart ailment, such an impact certainly would have tended to aggravate this condition and hasten his death. Where reasonable minds might honestly draw different inferences from the testimony, the question becomes one of fact within the province of the jury.

■ The statute, Article 8309 et seq., requires that the "damage or harm to the physical structure of the body" originate within the scope of employment and during the employee's work. This court, in Salinas v. New Amsterdam Casualty Company, 5 Cir., 67 F.2d 829, 830, defined such an injury as one "[occurring] unexpectedly and not in the natural course of events," and which "must be capable of being traced to a definite time, place, and cause." The evidence here shows that Strawn's fall and death were unquestionably traced to a time and place, and that there was reasonable doubt as to the cause, about which fair minded men might honestly disagree. We think that the jury might reasonably have concluded that the deceased's fall was the direct and immediate cause of his death, and that death would not have occurred but for the fall.

■■ It is well settled that the court may withdraw a case from the jury and direct a verdict for either side, where the evidence is undisputed or is so conclusive that the court, in its judicial discretion, would be compelled to set aside a verdict

not in conformity therewith. In determining whether the instructed verdict was properly given, we should indulge all reasonable inferences from the evidence in favor of the one against whom the verdict was directed. •Reid v. Maryland Casualty Co., 5 Cir., 63 F.2d 10; Hicks v. Georgia Casualty Co., 5 Cir., 63 F.2d 157; Fidelity & Casualty Co. of New York v. Neas, 5 Cir., 93 F.2d 137; Massachusetts Bonding & Insurance Co. v. Massey, 5 Cir., 123 F.2d 447; Travelers Insurance Co. v. McKain, 5 Cir., 186 F.2d 273; Millers' Indemnity Underwriters v. Schrieber, Tex. Civ.App., 240 S.W. 963; Norwich Union Indemnity Co. v. Smith, Tex.Com.App., 12 S.W.2d 558; Williams v. Lumbermen's Reciprocal Association, Tex.Civ.App., 18 S.W.2d 1093; Theago v. Royal Indemnity Co., Tex.Civ.App., 70 S.W.2d 473. In consideration whereof, we think the court erred in not allowing the case to go to the jury for a determination, among other things, of the cause of the death of the deceased.

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.