CHICAGO GREAT WESTERN RAIL-WAY COMPANY, a Corporation, Appellant,

v.

Leon SCOVEL, Appellee.

No. 15485.

United States Court of Appeals Eighth Circuit.

May 10, 1956.

**954**

David L. Grannis, Jr., So. St. Paul, Minn. (Grannis & Grannis and Luther M. Stalland, So. St. Paul, Minn., on the brief), for appellant.

Charles T. Hvass, Minneapolis, Minn. (Hvass, Weisman, Peterson, King & Schwappach, Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.

GARDNER, Chief Judge.

Appellee Leon Scovel brought this action against the Chicago Great Western Railway Company to recover damages for personal injuries suffered by him while he was in the employ of appellant. The parties will be referred to as they were designated in the trial court. At the time of receiving his injuries plaintiff was employed by defendant on its railroad, a common carrier engaged in interstate commerce, as a section foreman. In his complaint he charged defendant with negligence in the following particulars: (1) That it failed to furnish him with a reasonably safe place in which to work; (2) That it failed to furnish him with equipment that was in reasonably safe condition for the purpose for which it was to be used; (3) That it furnished him with equipment that was defective and in a state of disrepair; and (4) That it failed to exercise ordinary and reasonable care under the circumstances then existing.

Defendant by its answer denied all of the allegations of negligence contained in the complaint and alleged affirmatively that plaintiff's injuries were caused solely by his own negligence. The action was tried to the court and a jury. At the close of all the evidence defendant interposed a motion for a directed verdict on the grounds that " * * * no actionable negligence against it or any of its employees has been proved and as a matter of law appears that any injuries plaintiff received were a result of or caused proximately by his own contributory negligence." The court announced that it would reserve ruling on the motion until after verdict. The jury returned a verdict against defendant and in favor of plaintiff on all the issues. In due course the defendant moved for judgment notwithstanding the verdict, which motion the court overruled and entered judgment in favor of plaintiff and against defendant pursuant to the verdict. Defendant has appealed from the judgment so entered and seeks reversal on substantially the following grounds: (1) There was insufficient evidence for submitting to the jury the issue of defendant's negligence and that such negligence, if any, was the proximate cause of plaintiff's injuries; (2) The trial court erred in its instructions to the jury; (3) The trial court erred in admitting over defendant's objections the testimony of Orville J. Smith and all evidence relating to trailer cars; and (4) Plaintiff's counsel was guilty of misconduct in his final argument to the jury.

Before considering the merits of defendant's contentions we shall refer to the condition of appellant's brief. Rule 11(b) of this court provides that the brief shall contain, inter alia:

"A concise statement of the case in so far as is necessary for the court to understand and decide the points to be argued in the brief, giving the pages of the printed record where each fact stated can be found and verified. If a point relates to the admission or exclusion of evidence, the statement shall quote the evidence referred to, and any objections or other equivalent action taken relative thereto, together with the rulings of the court thereon, giving the pages of the printed record on which the quotations appear. * * * If a point relied upon relates to the giving of instructions or the refusal to give instructions requested, the statement shall quote the portions of the instructions or of

the requested instructions which are referred to, the objections or exceptions taken to the giving of the instructions or to the refusal to give requested instructions and the rulings of the court thereon, and shall give the pages of the printed record on which the quotations appear."

By inadvertence or otherwise, this rule has not been complied with. So far as any attempt is made to present rulings of the court on the admissibility of evidence, neither in the statement of the case nor in the points to be argued is to be found the evidence referred to, nor any objections or other equivalent action taken relative thereto, nor any rulings of the court thereon.

The brief is equally lacking in the essential requisites to present for review the correctness of the court's instructions. In this regard the brief is absolutely silent in the statement of the case and the points to be argued as to any quotation from " * * * the portions of the instructions or of the requested instructions which are referred to, the objections or exceptions taken to the giving of the instructions or to the refusal to give requested instructions and the rulings of the court thereon * * *." We are, at most, invited to search the record for error in this regard. In this state of the record we are warranted in disregarding these allegations of error and we shall pass them without discussing in detail the rulings complained of. We have, however, satisfied ourselves that there has been no miscarriage of justice and that no prejudicial error was committed by the trial court regarding any of these rulings now complained of.

The substantial question presented on this appeal is whether or not the court erred in not granting defendant's motion for a directed verdict interposed at the close of all the evidence or in denying his motion for judgment notwithstanding the adverse verdict of the jury.

In considering this question we must view the evidence in a light most favorable to the prevailing party and we must assume that all conflicts in the evidence have been resolved by the jury in his favor and that the evidence proves all facts which it reasonably tends to prove. The prevailing party is also entitled to the benefit of all such favorable inferences as may reasonably be drawn from the evidence. If, when so considered, reasonable minds might reach different conclusions then the case presents issues of fact to be submitted to the jury and not issues of law to be determined by the court. Lowden v. Hanson, 8 Cir., 134 F.2d 348; Carter Carburetor Corp. v. Riley, 8 Cir., 186 F. 2d 148; Chicago, Rock Island & Pacific Railroad Co. v. Lint, 8 Cir., 217 F.2d 279; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720.

With this rule in mind we turn to a consideration of the evidence. At the time of the accident plaintiff was employed by the defendant as a section foreman. He was a man of wide experience in the work of maintaining railway physical structures, including the roadbed, ballast, ties and rails. As section foreman he was in charge of a crew of thirteen workmen. They were furnished for use in transporting themselves, their necessary tools, and at times material, two cars, one designated as a motor car and the other as a push car. The push car was attached to the rear end of the motor car by means of a metal coupler with a flange at each end, one end of which fitted onto a protruding member at the back end of the motor car and the other end of which fitted onto a protruding member on the front end of the push car. There was a hole through the flanges and through the protruding members, and through this hole was fitted a pin or bolt about eight or ten inches in length so that there were two bolts in this completed coupling. The bolts had no nut nor other means of holding them in place but they had a head at the top and could not slip through the hole provided. The motor car was propelled by a gasoline engine and was equipped with seats to accommodate eight workmen. The push car had a flat board floor with no railing or seats of any kind for the accommoda-

tion of workmen. It had metal hand holds for the purpose of enabling workmen to remove it from the tracks.

On the morning in question plaintiff with a crew of thirteen men, eight of whom were on the motor car and five of whom were on the push car, started east on defendant's railroad from the town of Lamont, Iowa, proceeding toward a portion of the track and right of way which they were engaged in surfacing, which was a part of the duty of plaintiff and the section men composing his crew. Plaintiff and five other members of his work crew who were riding on the push car were furnished no accommodations or facilities for sitting down and dared not stand up so they sat on the flat surface with folded legs, referred to in the record as Indian fashion. Plaintiff was sitting on a keg in about the middle of the flat surface of the push car and one of the section men was sitting on the front end of the push car with his feet against the motor car. While thus proceeding at a rate of from ten to fifteen miles per hour one of the coupling pins in some manner not definitely known worked out of the coupling. When this happened the push car slackened its speed leaving a space between it and the motor car. This apparently unbalanced the workman who had his feet against the motor car and he fell forward and grabbed the bar across the front end of the push car, his head forward and his face upward. While in this perilous situation the motor car slackened its speed and plaintiff, observing the danger that the motor car would come in contact with the workman's head, dashed forward to rescue him and in doing so fell in front of the push car, receiving serious injuries by being run over. There was evidence to warrant the jury in finding that the push car was an old, badly worn piece of equipment. The wheels were worn and out of alignment so that when propelled it swayed from side to side and also up and down. There was evidence from which the jury could have found that this swaying motion and up and down motion of the push car could have resulted in working the pin out of the coupler. There was evidence **that** this danger could have been avoided by placing a nut at the bottom of the steel pins. There was also evidence that the plaintiff had complained to the defendant about the inadequacy and defective condition of this push car, particularly for the transportation of workmen, and there was evidence that other push cars or trailers in general use were equipped with facilities for seating the workmen being transported. There was expert testimony that the coupling device used on these cars was an unsafe device and that it was not a safe practice to require men to ride on a push car such as was involved in this accident and that there were other types of trailer cars in general use that were safe for the transportation of workmen. True, there was conflict in the evidence but as above noted we assume that all such conflicts were resolved in favor of the plaintiff.

Defendant's liability in this case must be determined under the provisions of the so-called Federal Employers' Liability Act. Under that act the railroad company is not an insurer of the safety of its employees and to entitle an employee to recover for personal injuries it is incumbent upon him to prove that his injuries resulted in whole or in part from the negligence of the carrier. 45 U.S.C.A. § 51. It is the duty of the railroad company to exercise ordinary care to furnish the employee with a reasonably safe place in which to work and to supply him with reasonably safe appliances and equipment. This, however, is not the limit of its duty toward the employee. It is also under the continuing duty of exercising ordinary care to see that the place where he is required to work is maintained in a reasonably safe condition and that the instrumentalities and appliances furnished for the use of the employee are reasonably fit for the intended use. Lowden v. Hanson, supra; Phillips Petroleum Co. v. Manning, 8 Cir., 81 F.2d 849.

It is contended that the plaintiff was guilty of negligence. The Federal Employers' Liability Act, however, abolishes many of the defenses available un-

der the common law. As said by us in McGivern v. Northern Pacific Ry. Co., 8 Cir., 132 F.2d 213, 216:

"The Federal Employers' Liability Act abolished certain defenses so far as common carriers engaged in Interstate Commerce are concerned, which were recognized at common law, in favor of an employer when sued for personal injuries received in the course of employment by an employee. Thus it abolished the defense embodied in the fellow servant rule; the defense of contributory negligence and the defense of assumption of risk. Minneapolis, St. P. & S. S. M. Co. v. Rock, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766; Moore v. Chesapeake & O. R. Co., 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755."

■ The question of whether or not plaintiff's injuries were proximately caused by the negligence of defendant or were caused solely by plaintiff's own negligence was clearly a question of fact to be determined by the jury and the jury's verdict is conclusive on that question. If plaintiff was contributorily negligent that in itself was not a defense but only went to the question of the amount of recovery. We are convinced that the jury under the evidence was warranted in finding the defendant guilty of negligence in that it failed to exercise ordinary care to furnish plaintiff with a reasonably safe place in which to work and in failing to furnish him with reasonably safe appliances and equipment with which to work and that such negligence was the proximate cause of the accident resulting in plaintiff's injuries.

It remains to consider the contention that defendant was deprived of a fair trial because of the alleged misconduct of counsel for plaintiff in his argument to the jury. The particular part of the argument complained of consists of the statement by plaintiff's counsel that there was a rule of defendant railroad that an employee must go to the rescue of another employee and company prop-

erty and a further statement that defendant put in contributory negligence charges to convince one or two jurors that plaintiff shouldn't get what he is entitled to.

■ It is argued that there was no rule of the railway company requiring an employee to go to the rescue of another employee. Whether there was or was not we think quite immaterial in the circumstances disclosed by the testimony. Plaintiff was suddenly confronted with an emergency. A fellow workman was apparently in imminent danger of death or bodily injury. In such circumstances he could not be charged with primary or contributory negligence. In fact, in cases of such emergency the employee, on his own volition, may step outside the line of his usual duties in an attempt to save himself from injury, to rescue another employee from danger or to save his employer's property. 35 Am. Jur., Master and Servant, p. 597; Miller v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 177 F.2d 224; Green v. Standard Wholesale Phosphate & Acid Works, D. C.Md., 29 F.2d 746. In 56 C.J.S., Master and Servant, § 469, p. 1309, the rule is succinctly stated as follows:

"The law has so great a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons".

■ It was therefore immaterial whether counsel's remarks with reference to defendant's rules were warranted or not. Regardless of any rule of the railroad company the applicable rule was substantially that stated by counsel for plaintiff. As to the statement in counsel's argument with reference to defendant's purpose in introducing evidence of plaintiff's contributory negligence the remarks quoted do not fairly reflect what counsel said on the subject. He in fact said:

"I don't believe there is any evidence at all of any contributory negligence on the part of Mr. Scovel. The reason why the railroad talks

about contributory negligence is that under the Federal Employers' Liability Act if an employee is guilty of some negligence himself that tends, that diminishes his damages, in other words, if an employee is guilty of negligence of 10 per cent, then he only gets a 90 per cent recovery of what his damages are. So, consequently, if a railroad can convince one or two of perhaps the members of a jury that the employee himself is partly responsible for the accident, then they gain their objective in holding back from the man the compensation that he is, or that he should be entitled to under the Federal Employers' Liability Act."

When the statement is considered in its entirety it is well within the scope of legitimate advocacy. It is also to be noted that there is here no claim that the damages awarded plaintiff were the result of passion or prejudice or were excessive. We are of the view that the remarks objected to cannot be urged as prejudicial to the defendant as they were well within the scope of the evidence and inferences that might legitimately be drawn therefrom.

The judgment appealed from is therefore affirmed.